UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
In re EXTENDED STAY, INC., et al.,    :   **OPINION AND ORDER**

    :   **Chapter 11 Case No.**

    Debtors.    :   **09-13764 (JMP)**

    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WALKER, TRUESDELL, ROTH &    :
ASSOCIATES, as Trustee for and on behalf of    :
the Extended Stay Litigation Trust, HOBART    :
TRUESDELL, as Trustee for and on behalf of    :
the Extended Stay Litigation Trust, and THE    :
EXTENDED STAY LITIGATION TRUST,    :

    :

    Plaintiffs,    :   **11 Civ. 5394 (SAS)**

    :   **Adv. Pro. No. 11-2398**

    - against -    :

    :

THE BLACKSTONE GROUP, L.P.,    :
BLACKSTONE HOLDINGS I L.P.,    :
BLACKSTONE HOLDINGS II L.P.,    :
BLACKSTONE HOLDINGS III L.P.,    :
BLACKSTONE HOLDINGS IV L.P.,    :
BLACKSTONE HOLDINGS V L.P.,    :
BLACKSTONE HOLDINGS I/II GP, INC.,    :
BLACKSTONE HOLDINGS III GP L.L.C.,    :
BLACKSTONE HOLDINGS IV GP L.P.,    :
BLACKSTONE HOLDINGS V GP L.P.,    :
BLACKSTONE REAL ESTATE PARTNERS    :
IV L.P., BLACKSTONE CAPITAL    :
PARTNERS IV L.P., BHAC IV, LLC, BRE/HV :
HOLDINGS LLC, BLACKSTONE    :
HOSPITALITY ACQUISITIONS, LLC,    :
PRIME HOSPITALITY, LLC, DL-DW    :
HOLDINGS, LLC, LIGHTSTONE HOLDINGS:
LLC, THE LIGHTSTONE GROUP, LLC,    :
PGRT ESH INC., LIGHTSTONE    :

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/10/11

COMMERCIAL MANAGEMENT, ARBOR          :
ESH II, LLC, ARBOR COMMERCIAL         :
MORTGAGE, LLC, PRINCETON ESH LLC,     :
ATMAR ASSOCIATES, LLC, GLIDA ONE      :
LLC, RON INVEST LLC, POLAR EXTENDED:
STAY (USA) L.P., BHAC CAPITAL IV, LLC,  :
BRE/ESH HOLDINGS, LLC, ABT-ESI LLC,   :
MERICASH FUNDING LLC, PARK AVENUE :
FUNDING LLC, BANK OF AMERICA, N.A.,   :
CITIGROUP GLOBAL MARKETS INC.,        :
EBURY FINANCE LIMITED, BANC OF        :
AMERICA SECURITIES LLC, DAVID         :
LICHTENSTEIN, BRUNO DE VINCK,         :
PEYTON "CHIP" OWEN, JR., GUY R.        :
MILONE, JR., JOSEPH CHETRIT, JOSESPH  :
TEICHMAN, JOSEPH MARTELLO, F.         :
JOSEPH ROGERS, DAVID KIM, GARY        :
DELAPP, JONATHAN D. GRAY, WILLIAM     :
STEIN, MICHAEL CHAE, ROBERT L.        :
FRIEDMAN, THOMAS BURDI, GARY          :
SUMERS, DENNIS J. MCDONAUGH, ALAN     :
MIYASAKI, and JOHN DOES 1 through 100,  :
inclusive,                            :
                                      :
              Defendants.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
WALKER, TRUESDELL, ROTH &             :
ASSOCIATES, as Trustee for and on behalf of  :
the Extended Stay Litigation Trust, HOBART  :
TRUESDELL, as Trustee for and on behalf of  :
the Extended Stay Litigation Trust, and THE  :
EXTENDED STAY LITIGATION TRUST,       :
                                      :
              Plaintiffs,             :        11 Civ. 5395 (SAS)
                                      :        Adv. Pro. No. 11-2256
       - against -                    :
                                      :
LIGHTSTONE HOLDINGS, LLC,             :

-2-

LIGHTSTONE COMMERCIAL                    :
MANAGEMENT, DL-DW HOLDINGS, LLC,         :
BHAC CAPITAL IV, LLC, ARBOR              :
COMMERCIAL MORTGAGE, LLC, ABT-ESI        :
LLC, MERICASH FUNDING, LLC, PARK         :
AVENUE FUNDING LLC, PRINCETON ESH        :
LLC, BANK OF AMERICA, N.A., J.P.         :
MORGAN COMMERCIAL MORTGAGE               :
INC., ASHFORD HOSPITALITY FINANCE        :
LP, ATLAS VENTURES I LLC, BARTON         :
EQUITIES LLC, BK ESH LLC, CL             :
VENTURES LLC, DEUCE PROPERTIES           :
LIMITED, EBURY FINANCE LIMITED, ESH      :
FUNDING LLC, FIF V ESA HOLDINGS LLC,     :
FIF V ESA LLC, FOA ESH LLC, GF ESH       :
LLC, GRAMERCY WAREHOUSE FUNDING          :
IV LLC, HOSPITALITY F, LLC, JPMORGAN     :
CHASE BANK, N.A., Individually and in its :
capacity as administrator, J.P. MORGAN   :
CLEARING CORP., LEGACY ESH LLC,          :
LINE TRUST CORPORATION LIMITED,          :
MERRILL LYNCH MORTGAGE LENDING,          :
INC., MERRILL LYNCH & CO., INC., SFF     :
ESH LLC, SW ESH LLC, SL GREEN            :
FUNDING LLC, WRP ESH LLC, and DOES 1     :
through 100, inclusive,                  :
                                         :
                    Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
WALKER, TRUESDELL, ROTH &                :
ASSOCIATES, as Trustee for and on behalf of :
the Extended Stay Litigation Trust, HOBART :
TRUESDELL, as Trustee for and on behalf of :
the Extended Stay Litigation Trust, and THE :
EXTENDED STAY LITIGATION TRUST,          :
                                         :
                    Plaintiffs,          :        11 Civ. 5396 (SAS)
                                         :        Adv. Pro. No. 11-2255

-3-

- against -                                    :

                                               :

THE BLACKSTONE GROUP, L.P.,                    :

BLACKSTONE HOLDINGS I L.P.,                    :

BLACKSTONE HOLDINGS II L.P.,                   :

BLACKSTONE HOLDINGS III L.P.,                  :

BLACKSTONE HOLDINGS IV L.P.,                   :

BLACKSTONE HOLDINGS V L.P.,                    :

BLACKSTONE HOLDINGS I/II GP, INC.,             :

BLACKSTONE HOLDINGS III GP L.L.C.,             :

BLACKSTONE HOLDINGS IV GP L.P.,                :

BLACKSTONE HOLDINGS V GP L.P.,                 :

BLACKSTONE REAL ESTATE PARTNERS                :

IV L.P., BLACKSTONE CAPITAL                    :

PARTNERS IV L.P., BHAC IV, LLC, BRE/HV         :

HOLDINGS LLC, BLACKSTONE                       :

HOSPITALITY ACQUISITIONS, LLC,                 :

PRIME HOSPITALITY, LLC, DL-DW                  :

HOLDINGS, LLC, CITIGROUP GLOBAL                :

MARKETS, INC., BANK OF AMERICA, N.A.,          :

and DOES 1 through 100, inclusive,             :

                                               :

            Defendants.                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WALKER, TRUESDELL, ROTH &                      :

ASSOCIATES, as Trustee for and on behalf of    :

the Extended Stay Litigation Trust, HOBART     :

TRUESDELL, as Trustee for and on behalf of     :

the Extended Stay Litigation Trust, and THE    :

EXTENDED STAY LITIGATION TRUST,                :

                                               :

            Plaintiffs,                          :        11 Civ. 5397 (SAS)

                                               :        Adv. Pro. No. 11-2254

- against -                                    :

                                               :

THE BLACKSTONE GROUP, L.P.,                    :

BLACKSTONE HOLDINGS I L.P.,                    :

BLACKSTONE HOLDINGS II L.P.,                   :

BLACKSTONE HOLDINGS III L.P.,      :
BLACKSTONE HOLDINGS IV L.P.,      :
BLACKSTONE HOLDINGS V L.P.,      :
BLACKSTONE HOLDINGS I/II GP, INC.,   :
BLACKSTONE HOLDINGS III GP L.L.C.,  :
BLACKSTONE HOLDINGS IV GP L.P.,   :
BLACKSTONE HOLDINGS V GP L.P.,   :
BLACKSTONE REAL ESTATE PARTNERS :
IV L.P., BLACKSTONE CAPITAL       :
PARTNERS IV L.P., BHAC IV, LLC, BRE/HV :
HOLDINGS LLC, BLACKSTONE       :
HOSPITALITY ACQUISITIONS, LLC,   :
PRIME HOSPITALITY, LLC, DL-DW    :
HOLDINGS, LLC, LIGHTSTONE HOLDINGS:
LLC, THE LIGHTSTONE GROUP, LLC,   :
PGRT ESH INC., LIGHTSTONE      :
COMMERCIAL MANAGEMENT, ARBOR  :
ESH II, LLC, ARBOR COMMERCIAL   :
MORTGAGE, LLC, PRINCETON ESH LLC, :
ATMAR ASSOCIATES, LLC, GLIDA ONE  :
LLC, RON INVEST LLC, POLAR EXTENDED:
STAY (USA) L.P., BHAC CAPITAL IV, LLC, :
BRE/ESH HOLDINGS, LLC, ABT-ESI LLC, :
MERICASH FUNDING LLC, PARK AVENUE :
FUNDING LLC, BANK OF AMERICA, N.A., :
CITIGROUP GLOBAL MARKETS INC.,   :
EBURY FINANCE LIMITED, BANC OF   :
AMERICA SECURITIES LLC, DAVID    :
LICHTENSTEIN, BRUNO DE VINCK,   :
PEYTON "CHIP" OWEN, JR., GUY R.    :
MILONE, JR., JOSEPH CHETRIT, JOSESPH :
TEICHMAN, JOSEPH MARTELLO, F.    :
JOSEPH ROGERS, DAVID KIM, GARY   :
DELAPP, JONATHAN D. GRAY, WILLIAM :
STEIN, MICHAEL CHAE, ROBERT L.   :
FRIEDMAN, THOMAS BURDI, GARY    :
SUMERS, DENNIS J. MCDONAUGH, ALAN :
MIYASAKI, and JOHN DOES 1 through 100, :

inclusive,                                   :

                                             :

                    Defendants.              :

- - - - - - - - - - - - - - - - - - - - - - - - - X

WALKER, TRUESDELL, ROTH &                    :

ASSOCIATES, as Trustee for and on behalf of  :

the Extended Stay Litigation Trust, HOBART   :

TRUESDELL, as Trustee for and on behalf of   :

the Extended Stay Litigation Trust, and THE  :

EXTENDED STAY LITIGATION TRUST,              :

                                             :

                    Plaintiffs,              :          11 Civ. 5864 (SAS)

                                             :          Adv. Pro. No. 11-2259

            - against -                      :

                                             :

ARCHON GROUP, L.P., individually and as      :

servicer, STARWOOD CAPITAL GROUP             :

GLOBAL, L.P., DEBT U ESH, L.P., DEBT II      :

ESH, L.P., WACHOVIA BANK, NATIONAL           :

ASSOCIATION, SQUARE MILE CAPITAL             :

MANAGEMENT, LLC, ESH OWNER, LLC,             :

KEYBANK, NATIONAL ASSOCIATION, U.S. :

BANK NATIONAL ASSOCIATION, not               :

individually but solely as Trustee for Maiden :

Lane Commercial Mortgage-Backed Securities   :

Trust 2008-1, Maiden Lane Commercial         :

Mortgage-Backed Securities Trust 2008-1 and  :

the Federal Reserve Bank of New York, and    :

DOES 1 through 100, inclusive,               :

                                             :

                    Defendants.              :

- - - - - - - - - - - - - - - - - - - - - - - - - X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Plaintiffs, Walker, Truesdell, Roth & Associates and Hobart

Truesdell, as Trustees for and on behalf of the Extended Stay Litigation Trust (the

"Trust"), and the Trust bring these motions to withdraw the reference, pursuant to

section 157(d) of Title 28 of the United States Code, of five adversary actions filed

in connection with the bankruptcy of Extended Stay, Inc., and its affiliated entities,

from the United States Bankruptcy Court to this Court.  Plaintiffs argue that all five

cases meet the standards for mandatory and permissive withdrawal of the

reference.  The gravamen of plaintiffs' argument is that an Article III court must

adjudicate these adversary actions under the Supreme Court's recent decision in

*Stern v. Marshall*.[1]   Defendants argue that withdrawal of the reference is neither

required by the mandatory withdrawal standard nor appropriate under the

permissive withdrawal standard.  For the reasons set forth below, plaintiffs'

motions to withdraw the reference are denied.

## II.   BACKGROUND

### A.   The Extended Stay LBO and Bankruptcy

Extended Stay, Inc. and affiliated entities (the "Debtors" or "Extended

Stay") "owned the leading mid-priced extended-stay hotel business in the U.S.,

with 684 hotels located in 44 states."[2]  On April 12, 2007, Lightstone Holdings

---

[1]     564 U.S. —, 131 S. Ct. 2595 (2011).

[2]     Compl. ¶ 146, Adv. Pro. No. 11-2254 (Bankr. S.D.N.Y.).

LLC and affiliated entities offered to purchase the Debtors in a leveraged buyout ("LBO") for eight billion dollars, comprised of $7.4 billion of debt, four-hundred million dollars of cash, and two-hundred million dollars of rollover equity.[3] Before the LBO, the "Debtors' business was encumbered by secured debt totaling approximately $3.3 billion and mezzanine debt totaling approximately $1.9 billion."[4]  The LBO closed on June 11, 2007.[5]

A little over two years later, on June 15, 2009, the Debtors filed for chapter 11 bankruptcy protection.[6]  In July 2010, the bankruptcy court confirmed the Extended Stay Plan of Reorganization (the "Plan").[7]  The Confirmation Order created the Trust to bring claims on behalf of the Debtors.[8]  The bankruptcy court retained jurisdiction over "any matters . . . arising in or related to the Chapter 11

---

[3]        *See id.* ¶¶ 170-171.

[4]        *Id.* ¶ 146.

[5]        *See id.* ¶ 185.

[6]        *See id.* ¶ 301.

[7]        *See* Fifth Amended Plan of Reorganization, Chapter 11 Case No. 09-13764 (Bankr. S.D.N.Y.) [Docket No. 1157]; Order Confirming Debtors' Fifth Amended Plan (the "Confirmation Order"), Chapter 11 Case No. 09-13764 (Bankr. S.D.N.Y.) [Docket No. 1172].

[8]        *See* Confirmation Order ¶ 15.

Cases of the Plan,"[9] including any claims by the Trustee "to recover assets for the benefit of the Debtors' estates."[10]

## B.     The Five Adversary Actions

Plaintiffs bring five separate actions, for the benefit of the Debtors' creditors, to recover billions of dollars that defendants allegedly destroyed in Debtors' value.  These claims essentially fall into two categories: (1) "At the LBO's closing, the pre-sale officers and directors allowed Blackstone to siphon $2.1 billion of value from the debtors"; and (2) "After the LBO, the post-sale buyer's officers, directors and members allowed the systematic draining of over $100 million through the continuous payment of improper dividends and distributions to post-LBO equity holders and their affiliates."[11]

*First*, on June 14, 2011, plaintiffs filed a complaint against the entities

---

[9]     *Id.* ¶ 59.

[10]     Plan § 12.2.

[11]     Plaintiffs' Memorandum of Law in Support of Motion to Withdraw the Reference [Nos. 11 Civ. 5394, 11 Civ. 5397] ("State Court Action Pl. Mem.") at 2.  *Accord* Plaintiffs' Memorandum of Law in Support of Motion to Withdraw the Reference [Nos. 11 Civ. 5396, 11 Civ. 5395] ("LBO Action Pl. Mem.") at 2; Plaintiffs' Memorandum of Law in Support of Motion to Withdraw the Reference [No. 11 Civ. 5864] ("Conflicts Action Pl. Mem.") at 2.

that consumated the LBO (the "LBO Complaint.").[12]  The defendants in this action include (1) the LBO sellers and their affiliated entities, (2) the LBO buyer and its related entities, and (3) the professionals who assisted with the LBO.  The LBO Complaint (1) seeks avoidance and recovery of fraudulent transfers and subsequent transfers made in connection with the LBO under the Bankruptcy Code, (2) seeks disallowance of claims under section 502(d) of the Bankruptcy Code, and (3) alleges causes of action under federal securities laws.[13]

Second, on the same date, plaintiffs filed another LBO-based Complaint against various entities that continue to receive payments and benefits as a result of the LBO (the "Post-LBO Complaint").[14]  The defendants are (1) lenders and entities that received payments on the debt the Debtors incurred in connection with the LBO, and (2) entities affiliated with the LBO buyer that received similar benefits and payments.  The Post-LBO Complaint seeks (1) the avoidance and recovery of fraudulent transfers and subsequent transfers made post-

---

[12]   *See Walker, Truesdell, Roth & Assoc. v. Blackstone Group, L.P. (In re Extended Stay, Inc.)*, Adv. Pro. No. 11-2255 (Bankr. S.D.N.Y.).

[13]   *See* LBO Compl. ¶¶ 245-350.

[14]   *See Walker, Truesdell, Roth & Assoc. v. Lightstone Holdings, LLC (In re Extended Stay, Inc.)*, Adv. Pro. No. 11-2256 (Bankr. S.D.N.Y.).

LBO, and (2) the disallowance of claims.[15]

      *Third*, on the same date, plaintiffs filed a Complaint in the Supreme Court of the State of New York, County of New York (the "State Court Complaint"),[16] which the Blackstone Defendants[17] removed to federal court on July 1, 2011.  This action was referred to the bankruptcy court on July 12, 2011.[18]  Plaintiffs, in a separate motion, seek to remand this action to the Supreme Court of the State of New York.  The State Court Complaint asserts state law causes of action for breaches of fiduciary duty, corporate waste, aiding and abetting breaches of fiduciary duty, unjust enrichment and illegal dividends and other distributions.  The defendants are (1) former directors, officers or other persons controlling the Debtors immediately prior to the LBO; (2) former directors, officers or other persons controlling the Debtors after the LBO closed; and (3) certain advisors

---

[15]    *See* Post-LBO Compl. ¶¶ 256-544.

[16]    *See Walker, Truesdell, Roth & Assoc. v. Blackstone Group, L.P.*, Index No. 651667/2011 (Sup. Ct. N.Y. Co.).

[17]    The Blackstone Defendants consist of the Blackstone Group, L.P., Blackstone Holding I L.P., Blackstone Holding II L.P., Blackstone Holding III L.P., Blackstone Holding IV L.P., Blackstone Holding V L.P., Blackstone Holdings III GP L.L.C., Blackstone Holdings IV GP L.P., Blackstone Capital Partners IV L.P., Blackstone Hospitality Acquisitions, LLC, and Blackstone Holdings V GP L.P.

[18]    *See Walker, Truesdell, Roth & Assoc. v. Blackstone Group, L.P. (In re Extended Stay, Inc.)*, Adv. Pro. No. 11-2398 (Bankr. S.D.N.Y.).

involved in consummating the LBO.

*Fourth*, on the same date, plaintiffs filed a Complaint in the bankruptcy court that is largely identical to the State Court Complaint (the "Mirror Image Complaint").[19]  Plaintiffs filed this Complaint to "avoid any risk of a statute of limitations defense were a New York Supreme Court [Justice] to conclude the Plan . . . provisions deprive the State of New York of subject matter jurisdiction and then dismiss that action, rather than transferring it to federal court."[20]  Plaintiffs will only proceed with either the State Court Complaint or the Mirror Image Complaint, depending on court rulings.[21]

*Fifth*, on June 15, 2011, plaintiffs filed a Complaint against various lenders by separate plaintiffs' counsel due to a potential conflict of interest (the "Conflicts Complaint").[22]  Like the post-LBO Complaint, the Conflicts Complaint seeks (1) the avoidance and recovery of fraudulent transfers and subsequent transfers made post-LBO, and (2) the disallowance of claims.

---

[19]     *See Walker, Truesdell, Roth & Assoc. v. Blackstone Group, L.P. (In re Extended Stay, Inc.)*, Adv. Pro. No. 11-2254 (Bankr. S.D.N.Y.).

[20]     State Court Action Pl. Mem. at 4.

[21]     *See id.*

[22]     *See Walker, Truesdell, Roth & Assoc. v. Archon Group, L.P. (In re Extended Stay, Inc.)*, Adv. Pro. No. 11-2259 (Bankr. S.D.N.Y.).

## III.   APPLICABLE LAW

### A.   Withdrawal of the Reference

#### 1.   Mandatory Withdrawal

Section 157(d) mandates that the district court withdraw a proceeding referred to the bankruptcy court if "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  The Second Circuit Court of Appeals construes this provision "narrowly," requiring withdrawal of the reference only if "substantial and material consideration of non-Bankruptcy Code federal [law] is necessary for the resolution of the proceeding."[23]  In construing the phrase "substantial and material consideration," "courts have held [such] consideration arises when a determination of issues requires 'significant *interpretation* of federal laws that [C]ongress would have intended to have decided by a district judge rather than a bankruptcy judge . . . .'"[24]  Withdrawal of the reference is mandated where "issues arising under non-title 11 laws dominate[]

---

[23]     *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990) (citations omitted).

[24]     *In re Texaco Inc.*, 84 B.R. 911, 921 (S.D.N.Y. 1988) (quoting *United States v. Johns-Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y. 1986)) (emphasis in original).

those arising under title 11 . . . ."[25]

Mandatory withdrawal is therefore appropriate where the case would require "the bankruptcy court to engage itself in the intricacies" of non-bankruptcy law, as opposed to "routine application" of that law[26] or the "straightforward application of a federal statute to a particular set of facts."[27] The "bare contention" that non-bankruptcy law is dispositive or in conflict with the Bankruptcy Code is not sufficient.[28]

### 2. Permissive Withdrawal

Section 157(d) also provides for permissive withdrawal of the reference: "The district court may withdraw, in whole or in part, any case or proceeding referred under this Section, on its own motion or on timely motion of any party, for cause shown." The Second Circuit has held that a district court

---

[25]     *Id.* (citation omitted).

[26]     *Id. Accord City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991).

[27]     *Mishkin v. Ageloff (In re Adler, Coleman Clearing Corp.)*, 270 B.R. 562, 564 (S.D.N.Y. 2001).

[28]     *California v. Enron Corp. (In re Enron Corp.)*, No. 05 Civ. 4079, 2005 WL 1185804, at *2 (S.D.N.Y. May 17, 2005) (holding that the "bare contention" that a claim involves Federal Power Act and Natural Gas Act preemption issues and conflicting Federal Energy Regulatory Commission opinions regarding tariffs is not sufficient to require withdrawal).

should consider a number of factors when deciding whether cause is shown, such as "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law."[29]  "The initial inquiry in evaluating a request for permissive withdrawal is whether the claim is core or non-core . . . ."[30]  After that, the court should weigh the remaining factors.  "While the core/non-core inquiry is important, no one factor is dispositive."[31]

### a.     Core and Non-Core Proceedings

Section 157(b)(2) provides a non-exhaustive list of core proceedings, such as "matters concerning the administration of the estate," "proceedings to determine, avoid, or recover preferences," "proceedings to determine, avoid, or recover fraudulent conveyances," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims."

---

[29]     *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).  *Accord South St. Seaport Ltd. P'ship v. Burger Boys (In re Burger Boys)*, 94 F.3d 755, 762 (2d Cir. 1996).

[30]     *In re G.M. Crocetti, Inc.*, No. 08 Civ. 6239, 2008 WL 4601278, at *2 (S.D.N.Y. Oct. 15, 2008).

[31]     *Id.* (citing *Northwest Airlines, Inc. v. City of Los Angeles*, 384 B.R. 51, 56 (S.D.N.Y. 2008)).  *Accord In re Burger Boys*, 94 F.3d at 762.

"'Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, . . . or (2) the proceedings directly affect a core bankruptcy function.'"[32]  Although a bankruptcy court may hear a non-core proceeding, it must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district court after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."[33]

### b.    Legal and Equitable

Whether a dispute is legal or equitable in nature and consequently whether the litigants are afforded the right to a jury trial is another consideration in determining whether the reference should be withdrawn.[34]  The Second Circuit has held that "the constitution prohibits bankruptcy courts from holding jury trials in

---

[32]    *In re Petrie Retail, Inc.*, 304 F.3d 223, 229 (2d Cir. 2002) (quoting *United States Lines, Inc. v. American Steamship Owners Mut. Protection & Indem. Ass'n, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999)).

[33]    28 U.S.C. § 157(c)(1).  *See also United States Lines*, 197 F.3d at 636.

[34]    *See McCord v. Papantoniou*, 316 B.R. 113, 122 (E.D.N.Y. 2004) ("[W]hether a litigant is entitled to a jury trial depends on the nature of the dispute, i.e., whether the claims asserted are legal or equitable.").

non-core matters."[35]  Even if the proceeding is determined to be core in nature and a jury trial is demanded, a bankruptcy court may only conduct a jury trial if "specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties."[36]  Thus, a bankruptcy court cannot provide complete adjudication of a matter that is non-core and in which any party declines to consent to a jury trial by the bankruptcy court.  However, permissive withdrawal to take "the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial-ready."[37]

### c.    Other Considerations

A motion for withdrawal of the reference will not be granted simply because of a party's demand for a jury trial without consideration of how far the litigation has progressed because such decision would run counter to the court's interest in judicial economy.[38]  In determining whether the reference should be

---

[35]    *In re Orion Pictures Corp.*, 4 F.3d at 1101.

[36]    28 U.S.C. § 157(e).

[37]    *In re Adelphia Inst., Inc.*, 112 B.R. 534, 548 (S.D.N.Y. 1990).  *Accord In re Kenai Corp.*, 136 B.R. 59, 61 (S.D.N.Y. 1992).

[38]    *See In re Enron Power Mktg., Inc.*, No. 01 Civ. 7964, 2003 WL 68036, at *10 (S.D.N.Y. Jan. 8, 2003) ("A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of

withdrawn, courts have also looked to a bankruptcy court's familiarity with the litigation, whether the bankruptcy court will offer a swift resolution of the issues,[39] and whether the withdrawal will lead to delays or increased costs for the parties.[40] Finally, courts consider whether granting the motion will prevent forum shopping and whether the claims alleged in the action turn on bankruptcy law such that it will affect uniformity in the administration of bankruptcy law.[41]

### B.    Article III and Bankruptcy Courts

Section 1 of Article III of the United States Constitution provides that

> The judicial Power of the United States shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.  The Judges, both of the

_____

how far along toward trial a case may be, runs counter to the policy of favoring judicial economy that underlies the statutory scheme governing the relationship between district courts and bankruptcy courts.") (quotations omitted).  *See also McCord*, 316 B.R. at 125 ("Courts routinely deny motions to withdraw reference despite a litigant's refusal to consent to a jury trial in bankruptcy court because of prevailing concerns about judicial economy.").

[39]    *See In re Wedtech Corp.*, 94 B.R. 293, 296 (S.D.N.Y. 1988) (refusing to withdraw reference at pre-trial stage where bankruptcy judge was familiar with the present action; to do so "would defy logic, and be a gratuitous and unnecessary waste of judicial resources," whereas leaving the reference undisturbed presented a "unique and compelling opportunity to promote judicial economy and swift resolution, to the benefit of both parties.").

[40]    *See In re Burger Boys, Inc.*, 94 F.3d at 762.

[41]    *See Solutia Inc. v. FMC Corp.*, No. 04 Civ. 2842, 2004 WL 1661115, at *4 (S.D.N.Y. July 27, 2004).

> supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services a Compensation, which shall not be diminished during their Continuance in Office.

Under Article III, Congress cannot

> withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty . . . .   At the same time there are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper.[42]

> In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*[43]

the Supreme Court failed to reach a consensus on the extent to which bankruptcy

courts may enter final judgments under the public rights exception.  However, a

majority held that, regardless of the precise scope of the exception, a bankruptcy

court did not have constitutional authority to enter a final judgment adjudicating a

state-law contract claim against a party not otherwise a part of the bankruptcy

proceedings.[44]  In doing so, the Article I bankruptcy court improperly exercised the

"judicial Power of the United States," which is vested in Article III courts where

---

[42]    *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1856).

[43]    458 U.S. 50 (1982).

[44]    *See id.* at 90 (Rehnquist, J., concurring).

judges have life tenure and salary protections.[45]  In response, Congress enacted the Bankruptcy Act of 1984, which amended the statutes governing the jurisdiction of bankruptcy courts to permit bankruptcy courts to only enter final orders as to "cases under title 11" and "core" claims "arising under title 11, or arising in a case under title 11."[46]

In *Stern v. Marshall*, the Supreme Court held that the current statutory regime failed to remedy all the constitutional infirmities identified in *Northern Pipeline*.  Specifically, a bankruptcy court improperly exercised the "judicial Power of the United States" by entering a final judgment on a common law counterclaim by the estate against a creditor for tortious interference, despite the fact that such a claim is characterized by the Bankruptcy Code as a "core" claim.[47] In holding that the bankruptcy court lacked authority to enter a final judgment on the counterclaim, the Court focused on the unique set of facts at issue in *Stern*, including that (1) the counterclaim would not be resolved by adjudication of the

---

[45]     *See id.*

[46]     *See* 28 U.S.C. § 157(b)(1).

[47]     *See Stern*, 131 S. Ct. at 2608; *see also* 28 U.S.C. § 157(b)(2)(C) ("counterclaims by the estate against persons filing claims against the estate" are core).

creditor's proof of claim;[48] (2) the counterclaim was "not completely dependent upon adjudication of a claim created by federal law";[49] and (3) the creditor "did not truly consent" to resolution in bankruptcy court.[50] In this "isolated respect" Congress exceeded the limitations of Article III by authorizing a bankruptcy court to enter a final judgment.[51] The Court stated that its decision was a "narrow" one that does not "meaningfully change[] the division of labor" between bankruptcy courts and district courts.[52] However, *Stern* leaves open several questions as to the exact circumstances under which a bankruptcy court lacks constitutional authority to enter a final judgment on a state-law counterclaim.[53]

## IV. DISCUSSION

### A. Mandatory Withdrawal

#### 1. *Stern v. Marshall* as Grounds for Mandatory Withdrawal

Plaintiffs argue that withdrawal is mandatory under section 157(d)

---

[48] *See Stern*, 131 S. Ct. at 2617.

[49] *Id.* at 2614 (quotation omitted).

[50] *Id.*

[51] *Id.* at 2620.

[52] *Id.*

[53] *See id.* at 2621 ("The sheer surfeit of factors that the Court was required to consider in this case should arouse the suspicion that something is seriously amiss with our jurisprudence in this area.") (Scalia, J., concurring).

because resolving these actions will involve substantial and material consideration and interpretation of non-bankruptcy federal law – i.e., the constitutional powers of the bankruptcy court.  According to plaintiffs, adjudication of these five actions will raise questions concerning "the unsettled nature of a bankruptcy court's constitutional authority to enter final judgments on suits initiated [by the Trustee] against third parties post-confirmation, especially when those suits are derived exclusively from noncore state law causes of action."[54]  After *Stern v. Marshall*, it is "now unclear whether the Bankruptcy Court's retention of jurisdiction . . . was constitutionally appropriate."[55]  Plaintiffs rely heavily on the decision in *In re BearingPoint, Inc.*[56] to demonstrate the risk of procedural complications from a bankruptcy court's retention of post-confirmation jurisdiction over state-law claims such as the ones at issue in these actions.

Defendants raise several arguments in response to plaintiffs' assertion that the holding of *Stern* mandates withdrawal.  *First*, section 157(d) only mandates withdrawal if the non-bankruptcy federal laws at issue "regulat[e]

---

[54]     State Court Action Pl. Mem. at 7.

[55]     *Id.* at 9.  *Accord* Conflicts Action Pl. Mem. at 7.

[56]     453 B.R. 486 (Bankr. S.D.N.Y. 2011) (amending a plan of reorganization to permit a trustee to pursue claims for breach of fiduciary duty in state court for the purpose, in part, of avoiding adjudication of such claims in the bankruptcy court).

organizations or activities affecting interstate commerce."  Here, defendants argue that the application of the holding of *Stern* to these five actions does not implicate activities affecting interstate commerce; rather, the application of *Stern* simply raises the question of whether the bankruptcy court may enter a final judgment or whether it should submit a recommendation to this Court.  *Second*, questions concerning the bankruptcy court's jurisdiction are not a basis for withdrawal – bankruptcy courts have the jurisdiction to determine their own jurisdiction.  In any event, *Stern* does not implicate the subject matter jurisdiction of bankruptcy courts. *Third*, certain defendants in the Conflicts Action argue that *Stern* explicitly has no effect where the Trustee has invoked section 502(d)[57] to disallow defendants' claims and where the Trustee has only asserted core claims such as fraudulent conveyance and preferential transfer claims.  *Fourth*, the Arbor Defendants[58] argue that although the actions should be withdrawn when tried, withdrawal is premature at this point, and the bankruptcy court should handle all pre-trial proceedings,

---

[57]     Section 502(d) provides in pertinent part that "the court shall disallow any claim of any entity . . . that is a transferee of a transfer avoidable" as a preference or fraudulent transfer.

[58]     The Arbor Defendants consist of Arbor ESH II, LLC, Arbor Commercial Mortgage LLC, ABT-ESI LLC, Guy R. Milone, Jr., and Joseph Martello.

including dispositive motions.[59]

The holding of *Stern* does not mandate withdrawal under section 157(d) in these five actions because the question of whether the bankruptcy court has authority to enter a final judgment does not implicate the regulation of organizations or activities affecting interstate commerce.  Although Congress could have provided for mandatory withdrawal where resolution of claims requires consideration of constitutional issues, it did not do so.[60]  Instead, Congress mandated withdrawal of claims where the "resolution of the proceeding requires consideration of both title 11 and other laws of the United States *regulating organizations or activities affecting interstate commerce*."[61]  *Stern* simply addresses a question of constitutional law concerning the authority of an Article I court to enter a *final judgment*.  Its application here does not implicate activities

---

[59]     *See* Arbor Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Withdraw the Reference ("Arbor Opp. Mem.") at 1.  The Arbor Defendants do not waive their right to a jury trial and do not consent to a jury trial before the Bankruptcy Court.  *See id.* at 2.

[60]     *Cf. In re Chateaugay Corp.*, 193 B.R. 669, 674 (S.D.N.Y. 1996) ("[T]he particular constitutional issue here is one that could almost always be raised by a party seeking withdrawal of the reference.  Holding that that issue mandates withdrawal would defeat Congress's purpose when it created the bankruptcy courts, and would transform § 157(d) into an escape hatch through which numerous cases would fall.").

[61]     28 U.S.C. § 157(d) (emphasis added).

affecting interstate commerce.[62]

For the same reasons, questions concerning the propriety of the

bankruptcy court's retention of jurisdiction post-confirmation are also inadequate

to mandate withdrawal under section 157(d).  Although plaintiffs question whether

the bankruptcy court's retention of jurisdiction in these actions is constitutionally

appropriate,[63] the bankruptcy court "has jurisdiction to determine its own

jurisdiction."[64]  Moreover, *Stern* is not a decision concerning subject matter

jurisdiction.[65]  Accordingly, plaintiffs' arguments – that the Plan and Confirmation

---

[62]    *See In re CIS*, 140 B.R. 351, 353 (S.D.N.Y. 1992) (denying mandatory withdrawal where an issue concerning bankruptcy court jurisdiction was raised); *see also In re Heller Ehrman LLP*, Adv. Pro. No. 10-3203, 2011 WL 4542512, at *1 n.4 (Bankr. N.D. Cal. Sept. 28, 2011) ("The district court may withdraw the reference 'for cause shown' and must withdraw if resolution of the proceeding 'requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce .'  If cause other than *Stern* has been alleged, or interstate commerce has been implicated (both unlikely), I make no recommendation.") (citation omitted); *In re Coe-Truman Techs., Inc.*, 214 B.R. 183, 186 (N.D. Ill. 1997) (denying mandatory withdrawal on the basis of questions under a provision of title 28, "which deals generally with the organization, jurisdiction, structure, and procedures of the federal judiciary").

[63]    *See* Confirmation Order ¶ 59 (retaining subject matter jurisdiction to the extent "legally permissible").

[64]    *In re CIS*, 140 B.R. at 353.

[65]    *See Stern*, 131 S. Ct. at 2607 (holding that the statutory allocation of "authority to enter final judgment between the bankruptcy court and the district court . . . does not implicate questions of subject matter jurisdiction.").

Order either do not permit post-confirmation jurisdiction or retain jurisdiction in the bankruptcy court unconstitutionally – are insufficient to support mandatory withdrawal.

Plaintiffs' reliance on *BearingPoint* to support mandatory withdrawal is misplaced because the factors considered by that court are analogous to the permissive withdrawal inquiry.  In *BearingPoint*, the bankruptcy court amended a plan of reorganization, pursuant to section 105(a) of the Bankruptcy Code,[66] to permit a trustee to pursue claims for breach of fiduciary duty in state court – it did not consider mandatory withdrawal of the reference under section 157(d).[67]  The decision in *BearingPoint* amended the reorganization plan based on considerations such as delay and efficiency.[68]  These concerns are considered in the analysis for permissive, not mandatory, withdrawal.[69]

Finally, plaintiffs argue that even if the holding of *Stern* does not

---

[66]   Section 105(a) provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

[67]   *See* 453 B.R. at 488.

[68]   *See id.* at 495 (noting that "my fears of delay are likely to be justified" and "I think that I erred in assuming that I could try these claims with the efficiency with which I've normally decided cases").

[69]   *See infra* Part IV.B.3.

compel withdrawal under section 157(d), I must withdraw the reference as to these actions because Article III prohibits the bankruptcy court from adjudicating them. Defendants respond that *Stern* does not require a substantial restructuring of the division of matters between Article III district courts and Article I bankruptcy courts.

Plaintiffs' request, if granted, would dramatically restructure the division of labor between district courts and bankruptcy courts by requiring that district courts hear a substantial percentage of adversary proceedings. Here, many of the complaints focus primarily on fraudulent conveyance and preferential transfer claims.[70] Moreover, many of these claims are asserted against creditors who filed proofs of claim in the Debtors' bankruptcy. Plaintiffs' claims against those defendants would likely be "resolved in the process of ruling on [their] proof[s] of claim."[71] Requiring withdrawal of such actions would be contrary to the language of *Stern*, which categorizes itself as a "narrow" decision that does not

---

[70] *Stern* does not affect the ability of the bankruptcy court to rule on state law fraudulent conveyance claims to the extent that a bankruptcy court may rule "with respect to state law when determining a proof of claim in the bankruptcy, or when deciding a matter directly and conclusively related to the bankruptcy." *In re Salander O'Reilly Galleries*, 453 B.R. 106, 117 (Bankr. S.D.N.Y. 2011); *see also In re Heller Ehrman LLP*, 2011 WL 4542512, at *4 ("[T]he Supreme Court did not hold in *Stern* that bankruptcy judges lack authority to render final judgments on fraudulent transfer claims.").

[71] *Stern*, 131 S. Ct. at 2620.

"meaningfully change[] the division of labor" between bankruptcy courts and district courts.[72]  Indeed, courts considering *Stern* have declined to give it the expansive scope that plaintiffs request.[73]

       In holding that *Stern* does not mandate withdrawal of these five actions, I do not reach the issue of how *Stern* applies to each of the 125 claims at

---

[72]    *Id.*

[73]    *See In re Ambac Fin. Grp., Inc.*, No. 10-15973, — B.R. —, 2011 WL 4436126, at *8 (Bankr. S.D.N.Y. Sept. 23, 2011) ("*Stern v. Marshall* has become the mantra of every litigant who, for strategic or tactical reasons, would rather litigate somewhere other than the bankruptcy court."); *In re Salander O'Reilly Galleries*, 453 B.R. at 115-18 (*Stern* "should be limited to the unique circumstances of that case" and "does not remove from the bankruptcy court its jurisdiction over matters directly related to the estate that can be finally decided in connection with restructuring debtor and creditor relations"); *see also In re Heller Ehrman LLP*, 2011 WL 4542512, at *1 ("Withdrawal of the reference at this time would amount to an unnecessary extension of the narrow holding in *Stern*, would be an inefficient use of judicial resources by overburdening the district court and foregoing the services of a bankruptcy court ready, willing and able to do its job and would distort the traditional way to challenge and decide the constitutionality of a federal statute."); *In re Safety Harbor Resort and Spa*, Adv. Pro. No. 06-50826, — B.R. —, 2011 WL 3240596, at *10 (Bankr. M.D. Fla. Aug. 30, 2011) (holding that *Stern* does not preclude bankruptcy courts from adjudicating core claims, but rather that it is a "narrow" holding that Congress exceeded the limits of Article III in "one isolated respect"); *In re Olde Prairie Block Owner, LLC*, No. 10 B 22668, — B.R. —, 2011 WL 3792406, at *5 (Bankr. N.D. Ill. Aug. 25, 2011) (*Stern* has a "narrow effect"); *In re Am. Bus. Fin. Servs., Inc.*, Adv. Pro. No. 06-50826, — B.R. —, 2011 WL 3240596, at *2 (Bankr. D. Del. July 28, 2011) (holding that bankruptcy courts have the authority to decide matters "directly and conclusively related to the bankruptcy" and granting summary judgment to defendants on avoidance and state law claims brought by trustee) (quotations omitted).

issue.  The bankruptcy court is capable of making that determination initially,

subject to de novo review by this Court.[74]  In the event that the bankruptcy court

does not have constitutional authority to enter a final judgment on certain claims, it

may submit proposed findings of fact and conclusions of law to this Court.

Withdrawing the reference simply due to the uncertainty caused by *Stern* is a

drastic remedy that would hamper judicial efficiency on the basis of a narrow

defect in the current statutory regime identified by *Stern*.  Neither the Supreme

Court nor most of the courts to consider *Stern* have given it the expansive effect

advocated by plaintiffs.  Accordingly, *Stern* does not provide a basis independent

of section 157(d) for mandatory withdrawal in these five actions.

### 2. Other Federal Claims as Grounds for Mandatory Withdrawal

Plaintiffs also point to the securities laws and Federal Debt Collection

Procedures Act ("FDCPA") claims as a basis for mandatory withdrawal.

Defendants respond that plaintiffs' handful of federal non-bankruptcy claims are

not a basis for mandatory withdrawal because they are barred by section 546(e) of

the Bankruptcy Code[75] or the plaintiffs lack standing to bring these claims under

---

[74]     *See In re CIS*, 140 B.R. at 353.

[75]     Section 546(e) provides that "the trustee may not avoid a transfer that
is a margin payment . . . or settlement payment . . . made by or to (or for the benefit
of) a commodity broker, forward contract merchant, stockbroker, financial

the Litigation Trust Agreement.

The federal non-bankruptcy claims at issue do not mandate withdrawal because plaintiffs have not shown that these issues will require "substantial and material consideration" of non-bankruptcy federal law.[76]   Indeed, the issues raised with respect to these claims on the motion to dismiss will not focus primarily on non-bankruptcy federal law.  Defendants raise section 546(e) of the Bankruptcy Code and the plaintiffs' standing to bring actions under the Plan and the Litigation Trust Agreement as defenses to these claims.[77]  Plaintiffs have not offered any explanation as to why the resolution of these claims will require "'significant interpretation of federal laws,'"[78] rather than the "application of a federal statute to a particular set of facts"[79] such that they may overcome the

---

institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract . . ., commodity contract . . ., or forward contract, that is made before the commencement of the case, except under section 548 (a)(1)(A) of this title [concerning actual fraudulent transfers]."

[76]     *In re Ionosphere Clubs*, 922 F.2d at 995.

[77]     *See* Blackstone Defendants' Opposition to the Litigation Trustee's Motions to Withdraw the Reference ("Blackstone Opp. Mem.") at 12.

[78]     *In re Texaco Inc.*, 84 B.R. at 921 (quoting *Johns-Manville Corp.*, 63 B.R. at 602) (emphasis omitted).

[79]     *Mishkin*, 270 B.R. at 564.

"narrow" scope this Circuit gives to mandatory withdrawal under section 157(d).[80]
Certainly, plaintiffs have failed to demonstrate that – on the basis of a handful of
claims out of 125 total claims – federal non-bankruptcy law will "dominate" other
issues, thereby mandating withdrawal.[81]

### B.   Permissive Withdrawal

Plaintiffs argue that several factors weigh in favor of withdrawal –
judicial efficiency, preventing delay and cost to the parties, and avoiding forum
shopping.  Defendants, however, contend that the weight of the factors militate
against withdrawal – the plaintiffs' claims are core and judicial economy would be
advanced by proceeding in the bankruptcy court.  Because the *Orion* factors weigh
against permissive withdrawal in these actions, I decline to withdraw the reference
on that basis.

### 1.   Core and Non-Core Proceedings

Although plaintiffs concede that many of their claims could be
classified as "core," they contend that the core/non-core distinction is no longer a
relevant consideration in light of *Stern*.  Even if this factor is still applicable,
plaintiffs contend that certain other claims are non-core – for example, the state

---

[80]     *In re Ionosphere Clubs*, 922 F.2d at 995.

[81]     *In re Texaco Inc.*, 84 B.R. at 921.

law claims raised in the Mirror Image Action.

Defendants argue that the plaintiffs' claims are all core claims.  *First*, defendants point to plaintiffs' complaints, which allege that the claims are core.[82] *Second*, the claims in the LBO Complaint, Post-LBO Complaint, and Conflicts Complaint are core, as plaintiffs admit, because they are primarily based on fraudulent conveyance claims pursuant to the Bankruptcy Code.[83]  *Third*, plaintiffs remaining causes of action in the LBO Complaint – under federal securities laws and FDCPA – and the state law causes of action in the Mirror Image Complaint are core because (1) these claims "arise under the Plan" as the Plan created the Trust and transferred the Debtors' claims to it; (2) the Bankruptcy Court expressly retained jurisdiction over these claims in its Confirmation Order; and (3) the claims are "inexorably tied" to the plaintiffs' core fraudulent conveyance claims.[84]

As an initial matter, there is nothing in *Stern* to suggest that the statutory distinction between core claims and non-core claims is an inappropriate

---

[82]    *See* LBO Compl. ¶ 14; Post-LBO Compl. ¶ 14; Conflicts Compl. ¶ 15; Mirror Image Compl. ¶ 144.  The State Court Complaint, which was filed in New York State Supreme Court, obviously does not contain such an allegation, but the remainder of the complaint, aside from jurisdictional allegations, is substantively identical to the Mirror Image Complaint.

[83]    *See* 28 U.S.C. § 157(b)(2)(H) ("proceedings to determine, avoid, or recover fraudulent conveyances" are core).

[84]    Blackstone Opp. Mem. at 18.

consideration when analyzing permissive withdrawal under section 157(d).  *Stern* held that section 157(b)(2)(C) exceeded the boundaries of Article III in characterizing certain state-law counterclaims by an estate, far removed from the substance of the bankruptcy proceedings, as "core" and permitting a bankruptcy court to enter a final judgment on such counterclaims.  It did not hold that section 157(b)(2)'s classification of "core" claims is entirely unconstitutional.  Accordingly, the core/non-core distinction is still a relevant consideration in permissive withdrawal analysis, except to the extent *Stern* holds that Congress's classification of a claim as "core" exceeds the boundaries of Article III.  In any event, this factor is not conclusive on withdrawal, as a bankruptcy court may still propose findings of fact and conclusions of law to the district court where it lacks authority to enter a final judgment.[85]

Turning to the claims at issue in these five actions,[86] many are core claims under section 157(b)(2).  These claims are not designated as core under the

---

[85]     *See* 28 U.S.C. § 157(c)(1); *see also United States Lines*, 197 F.3d at 636.

[86]     Although there is an intra-Circuit split as to whether the bankruptcy court must make the initial determination of whether claims are core or non-core, the majority position, supported by the language of *Orion*, supports the ability of this Court to make such a determination at this time.  *See In re Joseph DelGreco & Co., Inc.*, No. 10 Civ. 6422, 2011 WL 350281, at *3 (S.D.N.Y. Jan. 26, 2011) ("the weight of authority in this Circuit supports the proposition that a district court may make this determination in the first instance").

provision *Stern* puts in question, section 157(b)(2)(C).  Rather, claims based on alleged fraudulent conveyances pursuant to the Bankruptcy Code are classified as core claims by section 157(b)(2)(H).[87]  Likewise, the claims for preferential transfers are core claims because they arise under title 11 and are classified as core claims by section 157(b)(2)(F).  The claims for disallowance of claims under section 502(d) are also core claims because they arise under title 11 and are classified as core claims by section 157(b)(2)(B).

The plaintiffs' remaining claims – under the federal securities laws and the FDCPA in the LBO Action, and state law claims in the Mirror Image Action – present a closer question.  Because the classification of these claims as core or non-core is not dispositive of the withdrawal motions, I will consider the remaining factors without deciding whether these claims are core or non-core.[88]  The parties dispute the classification of these claims and whether the bankruptcy court could constitutionally enter a final judgment on these claims.  The parties advance nuanced arguments on both sides.  The record for my review is minimal.

_____

[87]      *See Rahl v. Bande*, 316 B.R. 127, 131 (S.D.N.Y. 2004); *In re Chargit Inc.*, 81 B.R. 243, 246-47 (Bankr. S.D.N.Y. 1987) (a claim "arises under Title 11" if it "is created by Title 11"); *see also* 28 U.S.C. § 157(b)(2)(H).

[88]      *See In re Fairfield Sentry Ltd.*, No. 10 Civ. 7340, 2010 WL 4910119, at *2 (S.D.N.Y. Nov. 22, 2010) ("The Court thus moves to the other relevant factors without reaching a conclusion on [whether the claims are core or non-core], which is not singularly dispositive.").

Accordingly, judicial economy and the uniform application of bankruptcy laws favor permitting the bankruptcy court to make an initial determination of the classification, and the extent to which a classification as "core" would be constitutional, of these claims – and any others I have not decided – because of the bankruptcy court's familiarity with the proceedings and underlying factual context.[89]

### 2.   Legal and Equitable

Plaintiffs briefly mention that the need for a jury trial weighs in favor of withdrawal – they support this argument by simply stating "there will no doubt be jury trial issues."[90]  However, at this time, this factor does not support plaintiffs' motion for withdrawal.

Plaintiffs concede that "the Court can await withdrawal of the reference until a later time on" the basis of a jury demand.[91]  Indeed, withdrawing

---

[89]   *See id.* ("The parties dispute the core/non-core issue in their papers, advancing nuanced arguments on both sides. . . .  [T]he bankruptcy court is familiar with these proceedings and the underlying factual context, and, moreover, it can employ its specialty expertise to this question.  Thus, judicial efficiency would be served and the uniform administration of the bankruptcy laws improved by allowing the bankruptcy judge to decide this issue in the first instance.").

[90]   Plaintiffs' Combined Reply in Further Support of the Motions to Withdraw the Reference at 11.

[91]   *Id.* at 12.

the reference is premature where discovery has not commenced and plaintiffs have not yet survived a motion to dismiss.[92]  These five actions are far from trial ready. Moreover, plaintiffs have provided no justification for the notion that the need for a jury trial should trump the interest in judicial economy,[93] discussed below. Accordingly, this factor does not support withdrawal.[94]

### 3.    Other Considerations

Plaintiffs again rely on the *Stern* decision to support permissive withdrawal.  Specifically, they argue that withdrawal will be a more efficient course because the proceedings could be "tied in procedural knots by motion practice" concerning the bankruptcy court's constitutional authority to enter a final judgment, regardless of whether defendants have consented or the causes of action are characterized as core or non-core.[95]  Plaintiffs rely heavily on the decision in *BearingPoint* to demonstrate the risk of procedural complications from a

---

[92]    *See In re Adelphia*, 112 B.R. at 538; *In re Kenai Corp.*, 136 B.R. at 61.

[93]    *See In re Enron Power Mktg., Inc.*, 2003 WL 68036, at *10; *McCord*, 316 B.R. at 125 ("Courts routinely deny motions to withdraw reference despite a litigant's refusal to consent to a jury trial in bankruptcy court because of prevailing concerns about judicial economy.").

[94]    *See In re Adelphia*, 112 B.R. at 538; *In re Kenai Corp.*, 136 B.R. at 61.

[95]    *See In re BearingPoint, Inc.*, 453 B.R. at 488.

bankruptcy court's retention of post-confirmation jurisdiction over claims such as the ones at issue here.

Defendants argue that the other *Orion* considerations weigh against withdrawal. *First*, plaintiffs' argument that *Stern* will cause delay is off the mark – even if the bankruptcy court does not have authority to enter a final judgment, it may still issue findings of fact and conclusions of law for this Court to review. Parties frequently appeal bankruptcy court decisions to the district court; this is not delay but the usual process. *Second*, defendants reiterate their point that *Stern* does not "meaningfully change[] the division of labor" between bankruptcy courts and district courts.[96] *Third*, plaintiffs' assertion that withdrawal would prevent forum shopping is baseless because defendants only seek to keep the actions in the forum that plaintiffs filed them in – the Bankruptcy Court for the Southern District of New York. *Fourth*, certain defendants argue that having the bankruptcy court decide these cases first would further judicial economy because of the bankruptcy court's familiarity with the Extended Stay bankruptcy proceedings.[97]

Here, the other *Orion* considerations weigh against withdrawal. The

---

[96]     131 S. Ct. at 2620.

[97]     *See* Wachovia Bank, N.A.'s Opposition to the Trustee's Motions to Withdraw the Reference at 14 (citing *In re Laventhol & Horwath*, 139 B.R.109, 116 (S.D.N.Y. 1992)).

bankruptcy court has been administering the Extended Stay bankruptcy for over two years.  Judicial economy would be promoted by allowing the bankruptcy court, already familiar with the extensive record in this case, to initially adjudicate these cases.[98]  Although it is doubtful that the bankruptcy court will offer a "swift resolution" of 125 claims asserted in five separate complaints,[99] allowing the matters to proceed initially in the bankruptcy court is the more efficient course.  Even if *Stern* precludes the bankruptcy court from entering final judgments as to certain claims, the bankruptcy court's proposed findings of fact and conclusions of law will narrow the issues to be resolved by this Court.

Likewise, and largely for the same reasons, the policy promoting the uniform application of bankruptcy law also weighs against withdrawal.[100]  The bankruptcy court is thoroughly familiar with the Extended Stay bankruptcy proceedings.  Moreover, adjudication of these claims will likely raise novel issues

---

[98]     *See In re Wedtech Corp.*, 94 B.R. at 296; *In re Laventhol & Horwath*, 139 B.R. at 116.

[99]     *In re Wedtech Corp.*, 94 B.R. at 296.

[100]    *See In re Enron Corp.*, 2005 WL 118504, at *3 ("[T]he uniform administration of the bankruptcy court proceedings weigh[s] in favor of not withdrawing the reference.  The Bankruptcy Court has presided over the Enron bankruptcy cases for over three years.  The Bankruptcy Court is more thoroughly familiar with the Debtors claims and issues in the instant matter and all of the other Enron-related cases.").

of bankruptcy law – such as questions relating to section 546(e).  Allowing the

bankruptcy courts to consider complex questions of bankruptcy law before they

come to the district court for de novo review promotes a more uniform application

of bankruptcy law.

Although issues raised by *Stern* might slow the adversary proceedings

somewhat, this concern does not justify permissive withdrawal in light of all the

other considerations weighing against withdrawal.  While the court in

*BearingPoint* indicated concern that the litigation could become bogged down due

to complications from *Stern*, that decision does not weigh in favor of withdrawal in

these five actions.  In *BearingPoint*, the bankruptcy court amended a plan of

reorganization to permit a trustee to pursue claims for breach of fiduciary duty in

state court.[101]  However, *BearingPoint* involved only one action.  Hearing that

action in state court eliminated the need to resolve any issues raised by *Stern*.[102]  In

contrast, plaintiffs have brought five separate actions raising a wide variety of

claims based on the same set of facts seeking largely identical recoveries, of which

only the claims in the State Court and Mirror Image Actions could arguably now

be heard in state court.  Judicial economy favors adjudicating all of the actions in

---

[101]    *See* 453 B.R. at 488.

[102]    *Id.*

the bankruptcy court and then permitting review by this Court, if necessary.

         Finally, the policy of avoiding forum shopping does not favor withdrawal.  Plaintiffs initially chose the forum – the United States Bankruptcy Court for the Southern District of New York.  Defendants wish to remain in the initial forum.  It is only plaintiffs who have sought to change the forum.  Prevention of forum shopping weighs in favor of keeping the actions in bankruptcy court.

## V.     CONCLUSION

         For the foregoing reasons, plaintiffs' motions to withdraw the reference are denied.  The Clerk of the Court is directed to close these motions [No. 11 Civ. 5394, docket #1; No. 11 Civ. 5395, docket #1; No. 11 Civ. 5396, docket #1, No. 11 Civ. 5397, docket #1; No. 11 Civ. 5864, docket #1] and these cases.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            November 10, 2011

**- Appearances -**

**For Plaintiffs:**

Marc Dennis Powers, Esq.
Benjamin David Pergament, Esq.
Baker & Hostetler LLP (NYC)
45 Rockefeller Plaza
New York City, New York 10111
(212) 589-4216/4622

Michael John Connolly, Esq.
Forman Holt Eliades & Ravin, LLC
80 Route 4 East
Paramus, New Jersey 07652
(201) 845-1000

**For Defendants Blackstone Group, L.P., Blackstone Holding I L.P., Blackstone Holding II L.P., Blackstone Holding III L.P., Blackstone Holding IV L.P., Blackstone Holding V L.P., Blackstone Holdings III GP L.L.C., Blackstone Holdings IV GP L.P., Blackstone Capital Partners IV L.P., Blackstone Hospitality Acquisitions, LLC, and Blackstone Holdings V GP L.P.:**

Paul Basta, Esq.
Kirkland & Ellis LLP (NYC)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

Daniel T. Donovan, Esq.
Kirkland & Ellis LLP
655 15th Street NW, Suite 1200
Washington, DC 20005
(202) 879-5000

**For Defendants Lightstone Holdings, LLC, The Lightstone Group, LLC, Lightstone Commercial Management, DL-DW Holdings, LLC, BHAC Capital IV, LLC, Park Avenue Funding LLC, David Lichtenstein, Bruno De Vinck, Peyton Chip Owen, Jr., and Joseph Teichman:**

Adina Giselle Storch, Esq.
Christopher Paul Johnson, Esq.
Howard W. Schub, Esq.
Robert M. Novick, Esq.
Kasowitz, Benson, Torres & Friedman, LLP (NYC)
1501 Broadway 12th, Floor
New York, New York 10036
(212) 506-1954/1700/1729/1758

**For Defendant PGRT ESH, Inc.:**

Edward Kevin Lenci, Esq.
Hinshaw & Culbertson LLP
780 Third Avenue
New York, New York 10017
(212) 471-6212

**For Defendants Bank of America, N.A., Banc of America Securities LLC, and JPMorgan Chase Bank, N.A., individually and in its capacity as administrator:**

Benjamin S. Kaminetzky, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4259

**For Defendant Citigroup Global Markets, Inc.:**

Thomas Joseph Hall, Esq.
Chadbourne & Parke LLP (NY)
30 Rockefeller Plaza
New York, New York 10112

(212) 408-5487

**For Defendants Deuce Properties Limited and Line Trust Corporation
Limited:**

Deborah H. Devan, Esq.
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland 21202
(410) 332-8522

**For Defendant Archon Group, L.P.:**

Judith Elkin, Esq.
Haynes and Boone, LLP (NY)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-4968

**For Defendants Starwood Capital Group Global, L.P., Debt U ESH, LP, Debt
II ESH, LP, Square Mile Capital Management, LLC, and ESH Owner, LLC:**

Gary D. Ticoll, Esq.
Greenberg Traurig, LLP (NYC)
200 Park Avenue
New York, New York 10166
(212) 801-2203

**For Defendant Wachovia Bank, National Association:**

James E. Hough, Esq.
Rachel M. Wertheimer, Esq.
Brett H. Miller, Esq.
LaShann M. DeArcy, Esq.
Morrison & Foerster LLP
1290 Avenue of The Americas
New York, New York 10104
(212) 468-8042

**For Defendant Keybank, National Association:**

Kristi Akins Davidson, Esq.
Buchanan Ingersoll & Rooney P.C. (NYC)
1290 Avenue of the Americas, 30th Floor
New York, New York 10104
(212) 440-4400

**For Defendants U.S. Bank National Association, not individually but solely in its capacity as Trustee for Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1, Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1, and the Federal Reserve Bank:**

Howard S. Zelbo, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000